## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEREMY D. MULDER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:18-cv-00029 |
| | ) | |
| v. | ) | District Judge Cathy Bissoon |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| WELLS FARGO BANK, N.A., | ) | |
| *d/b/a Wells Fargo Home Mortgage*, | ) | ECF No. 12 |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Court deny Defendant's Motion to Dismiss.

## II. REPORT

### A. BACKGROUND

### 1. Introduction

Presently before the Court is the Motion to Dismiss filed by Wells Fargo Bank, N.A. ("Defendant") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 12). In his Second Amended Complaint, Jeremy D. Mulder ("Plaintiff") files various claims *pro se* under the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. §§ 5701 *et seq.* ("Wiretap Act"), the federal Telephone Consumer Protection Act, 47 U.S.C. §§ 227 *et seq.*, and Pennsylvania common law for invasion of privacy. Defendant seeks dismissal of all Wiretap Act and common law claims.

## 2.  Factual and Procedural Background

Beginning on or about October 5, 2017, and ending on or about December 15, 2017, Defendant allegedly placed thirty-five (35) calls to Plaintiff's cellular telephone, often multiple times in one day, for the purpose of collecting a debt[1].  (ECF No. 7 ¶¶ 6 – 76).  The calls were placed by Defendant using an automated dialing system.  (*Id.*).  Defendant recorded its calls to Plaintiff, and made Plaintiff aware that the calls were being recorded at the inception of each.  (*Id.* ¶ 90).  Defendant had no prior business relationship with Plaintiff, and the recording of the telephone calls was allegedly against Plaintiff's will and without his consent.  (*Id.* ¶¶ 6 – 76, 83, 91 – 95).  Plaintiff informed Defendant that he did not consent to being called or to having calls recorded on or about October 5, 2017.  (*Id.* ¶¶ 96 – 98).  The calls persisted.  (*Id.* ¶ 99).

Plaintiff filed his initial Complaint in the Court of Common Pleas of Allegheny County, which was removed to this Court on January 5, 2018.  (ECF No. 1).  An Amended Complaint was filed on January 8, 2018 (ECF No. 3), and a Second Amended Complaint was filed on January 16, 2018 (ECF No. 7).  Defendant's Motion to Dismiss was filed on February 1, 2018. (ECF No. 12).  The matter is fully briefed and ripe for disposition.

## B.  ANALYSIS

## 1.  Standard of Review

Avoiding dismissal under Rule 12(b)(6) requires a complaint to provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'"  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 – 35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).  In assessing the merits of a claim subject to a motion to dismiss, a

---

[1]     The dates on which Plaintiff received calls are as follows: October 5, October 6, October 7, October 8, October 9, October 13, October 17, November 28, November 29, November 30, December 1, December 2, December 3, December 4, December 5, December 6, December 7, and December 15, 2017.  (ECF No. 7 ¶¶ 6 – 76).

court must engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 – 11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. *Id.* Second, it must be determined whether the facts as alleged support a "plausible claim for relief." *Id.* In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed factual allegations," *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). Moreover, pleadings filed by *pro se* litigants should be liberally construed. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (citing *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)).

Nevertheless, the facts pled do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Phillips*, 515 F.3d at 231 – 32 (quoting *Twombly*, 550 U.S. at 554 – 56). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* at 232. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Fowler*, 578 F.3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), and even *pro se* litigants are required to plead facts sufficient to supports their claims, and cannot flout procedural rules. *Mala,* 704 F.3d at 245.

   **2. Discussion**

   a. <u>Wiretap Act</u>

In counts one through nineteen of the Second Amended Complaint, Plaintiff asserts claims pursuant to § 5725(a)[2] of the Pennsylvania Wiretap Act  for intentional interception,

---

[2]       Section 5725 of the Wiretap Act states that: "[a]ny person whose wire, electronic or oral communication is intercepted, disclosed or used in violation of this chapter shall have a civil cause of action against any person who

disclosure, and use of his wire communications by Defendant, in violation of § 5703. Section

5703 of the Wiretap Act states that:

> Except as otherwise provided in this chapter, a person is guilty of a felony of the third degree if he:
>
>> (1) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, electronic or oral communication;
>> (2) intentionally discloses or endeavors to disclose to any other person the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know that the information was obtained through the interception of a wire, electronic or oral communication; or
>> (3) intentionally uses or endeavors to use the contents of any wire, electronic or oral communication, or evidence derived therefrom, knowing or having reason to know, that the information was obtained through the interception of a wire, electronic or oral communication.

18 Pa. Con. Stat. § 5703.

In response, Defendant makes three primary arguments: (1) Plaintiff had no reasonable, objective expectation that his communications with Defendant would not be intercepted; (2) Plaintiff has no standing to assert such claims because he was merely the recipient of calls made by Defendant; and, (3) that by continuing to communicate after being notified that the calls would be recorded, Plaintiff implicitly consented to interception.

Defendant first argues that Plaintiff could have no reasonable expectation of privacy as to the telephone conversations at issue. It is well-established that, under the Wiretap Act, "'telephone conversations are wire communications which, unlike oral communications, are *protected against interception without regard to the speaker's expectation of privacy*.'" *Commw. v. Diego*, 119 A.3d 370, 379 (Pa. Super. Ct. 2015) (quoting *Commw. v. Deck*, 954 A.2d

---

intercepts, discloses or uses or procures any other person to intercept, disclose or use, such communication." 18 Pa. Con. Stat. § 5725(a).

603, 608 – 09 (Pa. Super. Ct. 2008)).  Therefore, Plaintiff's expectation of privacy is irrelevant when pleading a claim for interception of a wire communication.  *Id.*[3]

However, Plaintiff's standing to raise a claim under the Wiretap Act is not so certain. "Pennsylvania courts have…consistently held that the interception of or recording of a telephone conversation by a private party without the consent of *all of the parties* violates the Wiretap Act." *Barasch v. Pa. Pub. Util. Comm'n*, 576 A.2d 79, 93 (Pa. Commw. Ct. 1990) (Pellegrini, J., concurring and dissenting) (emphasis added).  In *Barasch v. Bell Telephone Company of Pennsylvania*, the Supreme Court of Pennsylvania held that the "two-party consent rule has long been established in Pennsylvania as a means of protecting privacy rights and principles of statutory construction require that the provisions of the Wiretap Act be interpreted in a manner which is consistent with those concerns."  605 A.2d 1198, 1203 (Pa. 1992).  *See also Martinez v. City of Reading Prop. Maint. Div.*, No. 16-1290, 2018 WL 1290087, at *11 (E.D. Pa. Mar. 13, 2018) (citing *Barasch*, 605 A.2d at 1203) (consent to any form of interception is generally required from *all* parties).  When "the consent of less than all parties is required under the Wiretap Act, the General Assembly specifically so stated."  *Barasch*, 605 A.2d at 1203 (citing § 5704(2)(ii) (permitting law enforcement to intercept a communication where "one of the parties to the communication has given prior consent.").  Moreover, any exceptions to this rule are to be "very narrowly drawn."  *United Tel. Co. of Pa. v. Pa. Pub. Util. Comm'n*, 676 A.2d 1244, 1251 (Pa. Commw. Ct. 1996).

Plaintiff has plainly alleged that the wire communications between him and Defendant were intercepted and that he never consented to this interception.  Defendant has not cited to any of the explicitly enumerated exceptions to the two-party consent rule contained in § 5704 of the Wiretap Act.  In light of the aforementioned precedent set by the courts of Pennsylvania,

---

[3]      Defendant concedes this point in its Reply.  (ECF No. 16 at 3).

Plaintiff has alleged sufficient factual matter to demonstrate a violation of § 5703.  *See also Martinez*, No. 16-1290, 2018 WL 1290087, at *12 (observing that a party violated the Wiretap Act by recording telephone calls without the *recipients'* consent).

Notwithstanding the above, Defendant relies upon a number of federal district court cases in an attempt to persuade this Court that, as the purported recipient-only of the wire communications presently at issue, Plaintiff has no private right of redress under § 5725 for Defendant's alleged violation of § 5703.   In 2008, the district court in *Klump v. Nazareth Area School District* observed that the Wiretap Act "provides a cause of action only to a 'person whose wire, electronic or oral communication is intercepted, disclosed or used.'"   425 F. Supp.2d 622, 633 (E.D. Pa. 2006) (quoting 18 Pa. Con. Stat. § 5725).   As interpreted by the *Klump* court, this provision "suggests that the cause of action belongs to the person with whom the communication originated, not the recipient."   *Id.*[4]   In the present case, Defendant characterizes Plaintiff as the recipient-only of the wire communications at issue.   Indeed, Plaintiff did not plead that he initiated any calls with Defendant that were simultaneously recorded.   As argued by Defendant, *Klump* stands for the proposition that Plaintiff has no standing to assert a violation of the Wiretap Act.   *Id.*

For additional support, Defendant notes the holding of the district court in *Walsh v. Krantz* agreeing with the conclusion reached in *Klump*, and finding that because allegedly intercepted telephone calls did not originate with the plaintiff, the plaintiff had no standing to assert a claim under the Wiretap Act.   No. 1:07-CV-0616, 2008 WL 3981492, at *5 (M.D. Pa. Aug. 22, 2008).   Similarly, the district court in *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, recognized that a "Plaintiff has standing to assert claims only with respect to those

---

[4]      The district court's decision was affirmed on appeal, but on different grounds.  The Court of Appeals for the Third Circuit noted that the plaintiff did not raise the issue of standing on appeal; accordingly, the Court of Appeals did not address it.  *Walsh v. Krantz*, 386 F.App'x 334, 337 n. 5 (3d Cir. 2010).

communications sent by Plaintiff…not with respect to those communications sent by third parties." No. 07-1029, 2007 WL 4394447, at *4 (W.D. Pa. Dec. 13, 2007) (citing *Klump*, 425 F.Supp.2d at 633). Thus, it appears that if Plaintiff was truly the recipient-only of Defendant's telephone calls, he has no standing to assert a Wiretap Act claim. Plaintiff's Response cites no authority to the contrary.

However, § 5725 of the Wiretap Act clearly provides that "*[a]ny person* whose wire…communication is intercepted…in violation of this chapter shall have a civil cause of action." 18 Pa. Con. Stat. § 5725(a) (emphasis added). The courts in *Klump*, *Walsh*, and *Ideal Aerosmith*, do not cite rulings by any Pennsylvania state courts construing § 5725 as applicable only to the caller, and not the recipient of a call – particularly when the recipient of a call was also an active participant. The court in *Klump* found that the language of § 5725 merely "suggests" that the cause of action belongs only to the party with whom the communication originated. 425 F.Supp.2d at 633. This is likely because there is no explicit distinction in the language of § 5725 between the originator and recipient of a wire communication.

The definition of "wire communication" in the Wiretap Act is "[a]ny aural transfer made in whole or in part through the use of facilities for the transmission of communication by wire, cable or other like connection *between the point of origin and the point of reception*…" 18 Pa. Con. Stat. § 5702 (emphasis added). An "aural transfer" is a "transfer containing the human voice at *any point* between and *including* the point of origin and *the point of reception*." *Id.* (emphasis added). Thus, the definition of wire communication would appear to include an aural transfer from the party receiving a telephone call.

Plaintiff has not alleged that he was simply a passive recipient of telephone calls from Defendant; Plaintiff alleges that he also participated in these calls. If Plaintiff informed

7

Defendants during the telephone calls that he did not consent to being recorded, in addition to whatever else was communicated during the course of the calls, this would constitute an aural transfer between the point of origin and point of reception – a wire communication.  That the call was not initially placed by Plaintiff is immaterial.  The Supreme Court of Pennsylvania has established that the two-party consent rule applies to all Wiretap Act claims, and that the Wiretap Act is to be construed consistent with this rule in order to protect privacy.  To rule in conformity with *Klump*, *Walsh*, and *Ideal Aerosmith*[5] under the circumstances alleged in this case, would be to deny a party to a wire communication the private right to remedy a violation of the Wiretap Act, and would be at odds with Pennsylvania case law.  Based upon the allegations contained in the Second Amended Complaint, Plaintiff was a party to multiple telephone calls in which he actively exchanged words with Defendant; accordingly, his consent was required to record the calls.  Plaintiff has standing to bring claims for violation of his rights under § 5703, pursuant to § 5725 of Pennsylvania's Wiretap Act.

Defendant still argues[6] that the Wiretap Act claims should be dismissed because Plaintiff implicitly consented to the interception of the telephone calls at issue.  In the Second Amended Complaint, Plaintiff pled that "Defendant…advised Plaintiff during each answered call that his conversation was being monitored and recorded."  (ECF No. 7 ¶ 90).  Plaintiff never explicitly consented to this interception prior to receiving the calls, and on October 5, 2017, he allegedly declined to consent and requested that Defendant stop recording.  (*Id.* ¶¶ 95 – 98).  Defendant

---

[5]       The holdings in *Klump*, *Walsh*, and *Ideal Aerosmith* are not binding upon this Court.

[6]       This argument is made for the first time in Defendant's Reply brief.  (ECF No. 16 at 3).  Typically, "'an issue is waived unless a party raises it in its opening brief, and for those purposes a passing reference to an issue will not suffice to bring that issue before this court.'"  *Patel v. Saint Vincent Health Ctr.*, 2015 WL 630260, at *11 (W.D. Pa. Feb. 12, 2015) (quoting *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)).  The Court will, nevertheless, briefly address this argument because it will have no bearing upon the ultimate disposition of the instant motion.

continued to call Plaintiff, and continued to record those conversations despite Plaintiff's protests.  (*Id.* ¶ 99).

Defendant cites a case out of the Eastern District of Pennsylvania for the proposition that "consent can be implied in fact based on whether the surrounding circumstances demonstrate that the party whose communications were intercepted knew of such interceptions."  (ECF No. 16 at 4 – 6) (citing *Tarnoff v. Wellington Fin. Corp.*, 696 F.Supp. 151, 152 (E.D. Pa. 1988)).  However, no such statement appears in the reasoning of the *Tarnoff* court.  In fact, the court in *Tarnoff* allowed for the admission into evidence of intercepted communications despite concluding that the Wiretap Act had likely been violated, because "admitting the tapes…does not substantially thwart the policy underlying the Pennsylvania statute."  *Id.*   The court also noted that, because "the person whose statement was recorded without his consent testified at trial, the statement could have been admitted to impeach him."  *Id.*   There was no determination by the court that the Wiretap Act had not been violated due to any sort of implied consent.

 Defendant also cites to *Commonwealth. v. Arrington*, 86 A.3d 831 (Pa. 2014), for the same proposition.  (ECF No. 16 at 4 n. 3).  As with *Tarnoff*, the Pennsylvania Supreme Court in *Arrington* did not find that the Wiretap Act was not violated because of implied consent.  While the court in *Arrington* did indicate that there was a question as to whether implied consent existed, *Arrington* is factually distinguishable from the present case; in *Arrington*, the party whose communications were intercepted clearly stated that "it did not matter to him whether the call was being recorded."  *Arrington*, 86 A.3d at 847.

Defendant also looks outside the Third Circuit for support.  Defendant cites *In re Google Inc. Gmail Litigation*, wherein it was held that "consent can be implied in fact based on whether the surrounding circumstances demonstrate that the party whose communications were

intercepted knew of such interceptions."  No. 13-MD-02430-LHK, 2014 WL 1102660, at *14 (N.D. Cal. Mar. 18, 2014).  Yet, the court also determined that "if either party to a communication did not consent, that would end the inquiry."  *Id.*  "'Implied consent is consent in fact which is inferred from surrounding circumstances indicating that the party *knowingly agreed* to the surveillance.'"  *Id.* at 16 (quoting *Griggs-Ryan v. Smith*, 904 F.2d 112, 116 − 17 (1st Cir. 1990) (emphasis added)).  As pled by Plaintiff, the claims in the Second Amended Complaint make clear that he explicitly declined to consent to interception of his calls by Defendant.  According to the cases cited by Defendant, this is enough to end the inquiry into consent − express or implied.[7]  Therefore, Plaintiff's Wiretap Act claims should not be dismissed under an implied or implicit consent theory.

> b.  Invasion of Privacy

Under the common law of Pennsylvania, it has been recognized that "'an action for invasion of privacy is comprised of four distinct torts: (1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life and (4) publicity placing the person in a false light.'"  *Kline v. Security Guards, Inc.*, 386 F.3d 246, 259 − 60 (3d Cir. 2004) (quoting *Harris v. Easton Publishing Co.*, 483 A.2d 1377, 1383 (Pa. Super. Ct. 1984)).  In count twenty-one of the Second Amended Complaint, Plaintiff claims that the thirty-five calls received from Defendant constituted an intrusion upon seclusion.  (ECF No. 7 ¶¶ 257 − 65).  Defendant counters that the calls to Plaintiff were not sufficiently frequent or offensive to be a substantial

---

[7]     Defendant's citation to *United States v. Van Poyck*, is similarly unavailing.  77 F.3d 285, 291 (9th Cir. 1996) (Party was found to consent to recording because he "(1) signed a form warning him of monitoring and taping; (2) read signs above the phones warning of taping; and (3) read a prisoner's manual warning of the recordings.").  The case is factually distinguishable; in *Van Poyck*, there is no indication of an express withholding of consent prior to the recording.  *Van Poyck* also did not involve an interpretation of Pennsylvania's Wiretap Act relative to the issue of consent.

burden upon his existence, as required under Pennsylvania law.  (ECF Nos. 13 at 8 – 11; 16 at 4 – 5).

Following the definition provided in the Restatement (Second) of Torts, Pennsylvania courts have established that an intrusion upon seclusion has occurred when one "'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns…if the intrusion would be highly offensive to a reasonable person.'"  *Id.* at 260 (quoting *Harris*, 483 A.2d at 1383).  The intrusion must be of such nature and degree that it causes "'mental suffering, shame, or humiliation to a person of ordinary sensibilities.'"  *Doe by and through Doe v. Boyertown Area Sch. Dist.*, 276 F.Supp.3d 324, 404 (E.D. Pa. 2017) (quoting *Harris*, 483 A.2d at 1384 – 85).

Defendant argues that thirty-five "misplaced" calls is not enough to be considered an actionable intrusion.  (ECF No. 13 at 11).  The Second Amended Complaint contains only general allegations of "highly offensive" "hounding," resulting in "injuries, including but not limited to, anxiety and distress."  (ECF No. 7 ¶¶ 261, 263 – 64).  According to Defendant, such vague and conclusory allegations do not suffice to demonstrate a highly offensive intrusion.

On this issue, it has been found that:

> There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as a result of conduct to which the reasonable man would strongly object.  Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt.  It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded.

*Klein v. Commerce Energy, Inc.*, 256 F.Supp.3d 563, 593 – 94 (W.D. Pa. 2017) (quoting Restatement (Second) of Torts § 652B, cmt. d (1977)).  As further noted by Defendant, even generalized claims of persistent calls involving allegedly profane and abusive language are not

adequate when the plaintiff has failed to specify the number or substance of the calls.  *Stuart v. AR Res., Inc.*, No. 10-3520, 2011 WL 904167, at * 6 (E.D. Pa. Mar. 16, 2011).

Conversely, in *Hamburger v. Northland Group, Inc.*, a district court denied a motion for summary judgment when a plaintiff was mistakenly called only seven or eight times after instructing the defendant to stop.  No. 3:13-CV-01155, 2015 WL 631066, at * 8 (M.D. Pa. Feb. 12, 2015).  The court held that whether such circumstances constituted a substantial burden was a question of fact for a jury.  *Id.*  Similarly, in *Berk v. J.P. Morgan Chase Bank, N.A.*, a claim based upon approximately twenty-one calls over a period of two years, at three different residences and on four different telephone lines, and after the defendant had been advised that it was contacting the plaintiff in error, was considered sufficiently offensive to proceed.  No. 11-2715, 2011 WL 4467746, at * 7 (E.D. Pa. Sept. 26, 2011).  In *Desmond v. Phillips & Cohen Associates, Ltd.*, a plaintiff had been contacted by telephone at least fourteen times within a period of several months, and had been the recipient of multiple letters, even after the defendant had been told to cease all contact.  724 F.Supp.2d 562, 569 (W.D. Pa. 2010).  Although the content of the telephone calls and letters was not considered to be disrespectful or impolite, the persistence of the intrusion was considered to be sufficient to go before a jury for a determination as to whether it was substantial or highly offensive.  *Id.*

In the present case, Plaintiff has alleged being called on thirty-five occasions during a two-month period, often multiple times in one day, and after informing Defendant during the first call that Defendant was not contacting the correct party.  Viewed in the light most favorable to Plaintiff, and upon consideration of the holdings by district courts analyzing similar factual scenarios, the Court finds that the Second Amended Complaint contains sufficient allegations of

persistent telephone calls which a reasonable person could find highly offensive.  It is therefore recommended that the motion to dismiss Plaintiff's claim for invasion of privacy be denied.

## C. CONCLUSION

Based upon the foregoing, Plaintiff has alleged facts sufficient to establish civil claims for intentional interception of a wire communication, in violation of the Wiretap Act, and for invasion of privacy under the common law of Pennsylvania.  Accordingly, it is recommended that Defendant's Motion to Dismiss be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C.  636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections will constitute a waiver of any appellate rights.

Lisa Pupo Lenihan
United States Magistrate Judge

Dated: July 10, 2018

13